IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ORTON JABULANI BEZA, ) | Case No. 03-22186-drd |
| Debtor. ) | Adv. No. 03-2064 |
| ) | |
| ) | |
| Q.C. Financial Services, Inc. ) | |
| d/b/a Quik Cash, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Orton Jabulani Beza, ) | |
| Defendant. ) | |

MEMORANDUM OPINION

The matter is before the Court on the Complaint to Determine Dischargeability of a Specific Debt ("Complaint") filed by Q.C. Financial Services, Inc., d/b/a Quik Cash ("Q.C.") against Orton Jabulani Beza ("Debtor"). In the Complaint, Q.C. asserted that Debtor's debt to it should be non-dischargeable pursuant to 11 U.S.C. 523(a)(2)(A). Q.C. alleged that Debtor intended not to perform when he presented two checks to Q.C., or that Debtor misrepresented with the intent to deceive Q.C. that the account had or would have sufficient funds to cover the checks when presented. In the Answer filed by Debtor he denied all allegations that he had intentionally misrepresented to Q.C. that he had funds to cover the checks. The parties submitted a Joint Stipulation to Presentation of Evidence ("Stipulation"). Debtor did not present any evidence in the Stipulation. The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(I).

## I. BACKGROUND

On January 31, 2002, Debtor presented two checks to Q.C. in the total amount of $20,000[1]. In exchange for these checks, Q.C. gave Debtor $19,000 in the form of cash[2]. On January 31, the checking account upon which the checks were drawn had a balance of $447.59[3]. On February 8, 2002, Debtor closed the checking account and withdrew the remaining funds[4]. When Q.C. presented the checks to Debtor's bank for payment the checks were returned unpaid and marked "account closed."[5]

## II. DISCUSSION AND ANALYSIS

11 U.S.C. § 523(a)(2) provides:

A discharge under 727. . . of this title does not discharge an individual debtor from any debt-

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

---

[1] Stipulation, Affidavit of Kerry Hart, ¶3; Ex. A.

[2] Stipulation, Affidavit of Kerry Hart, ¶4.

[3] Stipulation, Affidavit of Kerry Hart, ¶6; Ex. B.

[4] Stipulation, Affidavit of Kerry Hart, ¶7; Ex. B.

[5] Stipulation, Affidavit of Kerry Hart, ¶5; Ex. A.

A creditor proceeding under § 523(a)(2) must prove the following elements: (1) the debtor made false representations; (2) the debtor knew the representations to be false at the time the debtor made them; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor actually relied on the debtor's representations; and (5) the creditor sustained the alleged injury as the proximate result of the making of the representations. *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987), as modified by *In re Ophaug*, 827 F.2d 340, 343 (8th Cir. 1987); *In re Newell*, 164 B.R. 992, 995 (Bankr. E.D. Mo. 1994); *In re Anderson*, 181 B.R. 943, 948 (Bankr. D. Minn. 1995).

A.  False Representation

The first element requires that a creditor establish that the debtor made false representations. Generally, courts have held that "the delivery of an ultimately-dishonored check, *without more*, does not constitute an actionable representation under § 523(a)(2)." *See, e.g., Newell*, 164 B.R. at 995 (emphasis added).; *see also, e.g., In re Tuggle*, 86 B.R. 612, 615 (Bankr. E.D. Mo. 1988). However, when surrounding circumstances indicate that a debtor intended to deceive a creditor when issuing an insufficient funds check, and when a debtor knew that sufficient funds did not exist, a debtor is not entitled to a discharge of the debt. *See Newell*, 164 B.R. at 995 (citing *In re Kurdoghlian*, 30 B.R. 500 (B.A.P. 9th Cir. 1983); *In re Miller*, 112 B.R. 937 (Bankr. N.D. Ind. 1989); *In re Lewsadder*, 84 B.R. 711 (Bankr. D. Or. 1988); *In re Mullin*, 51 B.R. 377 (Bankr. S.D. Ind. 1985)). Although there is a split of authority on the question, many courts have held that the tendering of a check constitutes an implied representation that the account on which the check is drawn has or will have sufficient funds to cover the check when presented. *See, e.g., Kurdoghlian*, 30 B.R. at 502

(tendering of check implicit representation sufficient funds exist to cover check); *see also, Miller*, 112 B.R. at 940 ("[t]he delivery of a check carries with it the implied, if not actual, representation that it will be honored by the bank upon which it is drawn or that there are sufficient funds in the account with which to pay the check."); *In re Almarc Mfg., Inc.*, 62 B.R. 684, 689 (Bankr. N.D. Ill. 1986) (issuance of check constitutes implied representation of sufficient funds); *Sunbank of Tampa Bay v. Perkins (In re Perkins)*, 52 B.R. 355 (Bankr. M.D. Fla. 1985); *Frits Loonstein, Inc. v. Mullin (In re Mullin)*, 51 B.R. 377 (Bankr. S.D. Ind. 1985); *Newell*, 164 B.R. at 995-96.

The Court acknowledges that another line of cases exists that hold that the issuance of a check, by itself, is not a false representation that there are sufficient funds in the account. *See, e.g., Goldberg Securities v. Scarlata*, 979 F.2d 521 (7th Cir. 1992); *In re Alvi*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); *In re Anderson*, 181 B.R. 943 (Bankr. D. Minn. 1995). These cases tend to rely on *Williams v. U.S.*, 458 U.S. 279 (1982), for the proposition that the issuance of a check is not a representation of sufficient funds in the account. This Court agrees, however, with those courts that have determined not to follow *Williams* on the grounds that it was interpreting a specific criminal statute in a criminal context and is not applicable to bankruptcy law. *See, e.g., In re Anderson*, 181 B.R. 943, 949 (Bankr. D. Minn. 1995); *Newell*, 164 B.R. at 995, n. 3. This interpretation also comports more closely with "the commercial realities and expectations which accompany payment by check." *Miller*, 112 B.R. at 940. A check is more than just a direction to the drawee bank to pay the amount upon presentation, it is also an unconditional promise to pay on the instrument if not honored by the drawee bank. Mo. Rev. Stat. § 400.3-414(b); *See American Security Insurance Service, Inc. v. Damiani (In re Damiani)*, 157 B.R. 17, 20 (Bankr. N.D. Ohio 1993). This Court, therefore, concludes that Debtor impliedly

4

represented to Q.C. that sufficient funds existed to cover the two $10,000 checks.  That representation was obviously false.

The second element requires that Debtor knew the representations were false when they were made.  *See Newell*, 164 B.R. at 996.  The evidence shows that on January 31, 2002, when Debtor issued two checks in the total amount of $20,000 to Q.C., the account upon which the checks were drawn had a balance of only $447.59.  On February 8, 2002, only 8 days thereafter, Debtor closed the account and withdrew the remaining funds of $324.85. When Q.C. presented the checks to Debtor's bank for payment, the checks were returned unpaid and marked "account closed."  The substantial discrepancy between the amount of the checks presented to Q.C. by Debtor and the amount of funds in the account on January 31 compels the conclusion that Debtor knew the implied representation that he possessed sufficient funds to cover the checks was false when it was made, or that Debtor acted with such reckless disregard for the status of his account as to amount to wilful misrepresentation.  *See Supercom, Inc. v. Levitsky (In re Levitsky)*, 137 B.R. 288, 291 (Bankr. E.D. Wis. 1992).

The third element requires proof that the debtor made the false representations with the intent to deceive the creditor.  *See Newell*, 164 B.R. at 996.  Direct evidence of intent rarely exists and courts may look to surrounding circumstances to ascertain intent.  *Id.; Levitsky*, 137 B.R. at 291; *Kline's Service Center, Inc. v. Fitzgerald (In re Fitzgerald)*, 109 B.R. 893, 897 (Bankr. N.D. Ind. 1989). Debtor has denied that he had the requisite intent to deceive Q.C. but offered no evidence in the Stipulation to support his denial.  Again, as discussed above, the Court concludes that the substantial discrepancy between the amounts of the checks presented to Q.C. by Debtor and the amount of funds in the account on January 31 compels the conclusion that Debtor possessed the intent to deceive Q.C.

5

Further, the subsequent withdrawal of the funds from the account only eight days after issuing the checks also supports the conclusion that Debtor had the requisite intent to defraud or deceive Q.C. *Fitzgerald*, 109 B.R. at 897. ("[A] promisor's subsequent conduct may reflect his state of mind at the time he made the promise, and thus be considered in determining whether he possessed the requisite fraudulent intent.").

The fourth element requires a showing that the creditor relied on the representations of the debtor. *See Newell*, 164 B.R. at 996; *Anderson*, 181 B.R. at 951-52. The Stipulation submitted by the parties indicates that Debtor owned and ran a business across the street from Q.C. and was known to the Q.C. employee who gave value for the checks. Debtor did not present any contrary evidence. The Court concludes that Q.C. relied on Debtor's representation that there were sufficient funds in the account to cover the checks and that such reliance was not unreasonable given Debtor's status as a neighboring business owner.

The fifth and final element required for nondischargeability is that the creditor sustained the alleged injury as a proximate result of the representations having been made. *Id.* at 997. It is clear that Debtor's misrepresentation caused Q.C. to suffer the loss of the $19,000 that it gave to Debtor in exchange for the checks. Debtor subsequently paid to Q.C. $1,024.20, which reduced the amount that Q.C. was damaged to $17,975.80[6].

Based on the above discussion and circumstances surrounding the transaction at issue, the Court finds that Q.C. has satisfied all of the elements to establish a false representation under

---

[6]Stipulation, Affidavit of Kerry Hart, ¶¶ 16 & 17.

§ 523(a)(2)(A). Accordingly, the debt owed to Q.C. by Debtor in the amount of $17,975.80 is non-dischargeable.

B. False Pretenses

Even if the Court were to agree with the line of cases that hold that an explicit representation that there are sufficient funds to cover an issued check must be made in order for the debt to be deemed non-dischargeable under § 523(a)(2)(A), which it does not, the debt would still be non-dischargeable under the "false pretenses" provision of that subparagraph. The concept of "false pretenses" contemplates "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor." *Anderson*, 181 B.R. at 950. A debtor's silence as to a fact material to his debt obligation to a creditor satisfies the first element of § 523(a)(2)(A). *Id.* (finding where debtor has possession of material information that may bear on creditor's willingness to extend financial accommodation, knows creditor would consider it, fails to disclose it, allows creation of semblance of very different state of affairs, and reinforces that by the withholding of material information, debtor has acted to trigger § 523(a)(2)(A)).

By issuing two $10,000 checks to Q.C. and accepting the $19,000 advance, Debtor actively created the impression that Q.C. could recover the amounts of the issued checks by presenting them for payment at Debtor's bank. The pretense that accompanied his tender of the checks was that his bank would honor them when Q.C. presented them. *Id.*; *cf. In re Miller*, 112 B.R. at 940 n. 1 (recognizing the pretense mirrors the actual expectation of the payee of any check, which in turn "gives

effect to the commercial realities. . . which accompany payment by check."). Clearly, this pretense was false. As discussed above, the gross disparity in the amount for which the checks were issued and the actual amount of funds in the checking account, coupled with the fact that Debtor closed the account 8 days later, demonstrates that Debtor knew the pretense was false. Thus, the first and second elements of § 523(a)(2)(A) are met.

The intent to induce a material change of position on the part of the creditor is sufficient to meet the third element. *Anderson*, 181 B.R. at 951. As discussed above, by tendering the checks, the Debtor intended to induce Q.C. to rely on the false pretense that there were sufficient funds in the checking account to cover the checks. Q.C. has also proven that it relied on the Debtor's false pretense. When a commercial payee receives a check, it relies on the pretense that the check, as consideration, is very close to the equivalent of cash. *Id.* at 952. The Q.C. employee relied on that pretense in accepting Debtor's checks in exchange for cash. The fifth element, damages, is proven by the fact that Q.C. advanced $19,000 to Debtor in exchange for the checks that were soon thereafter dishonored.

### III.  CONCLUSION

For the reasons stated above, the Court finds that Q.C. has proven the elements of § 523(a)(2)(A) by a preponderance of the evidence and, therefore, the debt owed to Q.C. by Debtor in the amount of $17,975.80 is non-dischargeable.

The foregoing constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. A separate order will be entered as required by Rule 9021.

                                                        /s/ Dennis R. Dow  
                                                        Bankruptcy Judge

Date: June 1, 2004

Copies to:

Noel (Neal) Bisges  
David E. Shay